IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 18, 2024 Session

## ROLAND BROWN v. HDR LOGISTICS, LLC

**Appeal from the Circuit Court for Jefferson County**
**No. 26696-I     Carter Scott Moore, Judge**

_____

### No. E2024-00144-COA-R3-CV

_____

This appeal concerns a motion to set aside a default judgment. Roland Brown ("Plaintiff") sued HDR Logistics, LLC ("Defendant") in the Circuit Court for Jefferson County ("the Trial Court") alleging that he sustained injuries from an incident in which Defendant's employee backed his tractor-trailer into Plaintiff's parked tractor-trailer. Plaintiff served a copy of the complaint and summons on Lisa Blackwell ("Blackwell"), Defendant's designated agent in Tennessee for service of process. Defendant failed to respond, and Plaintiff obtained a default judgment. Defendant later filed a motion to set aside. Defendant submitted the affidavits of two individuals who said that the company did not receive notice of the lawsuit. Notably, the record contains no affidavit from Blackwell explaining what happened. The Trial Court denied Defendant's motion. Defendant appeals, arguing that its failure to respond was due to excusable neglect in that it lacked actual notice of the lawsuit even though its agent was served, and that the Trial Court failed to conduct a writ of inquiry on unliquidated damages as required. We hold, *inter alia*, that the Trial Court did not abuse its discretion in denying Defendant's motion to set aside default judgment. We hold further that Defendant failed to meet its burden showing the Trial Court did not conduct an appropriate evidentiary hearing on unliquidated damages. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and JEFFREY USMAN, JJ., joined.

Earl W. Houston, II, and Emma C. Kent, Memphis, Tennessee, for the appellant, HDR Logistics, LLC.

Donald Capparella and Jacob A. Vanzin, Nashville, Tennessee, for the appellee, Roland Brown.

# OPINION

## Background

In March 2021, Plaintiff sued Defendant in the Trial Court alleging that he sustained injuries as a result of a February 2021 incident in which an employee of Defendant's backed his tractor-trailer into Plaintiff's parked tractor-trailer at a Pilot Travel Center in Dandridge. A civil summons was issued. In April 2021, Plaintiff served a copy of the complaint and summons on Blackwell, Defendant's designated agent in Tennessee for service of process under the Federal Motor Carriers Safety Act. Defendant did not respond.

On June 7, 2021, Plaintiff moved for default judgment. Plaintiff mailed a copy of the motion to Blackwell. On July 19, 2021, Plaintiff filed an amended complaint. A civil summons was issued, and Plaintiff served Blackwell the amended complaint and summons. Defendant still took no action. Plaintiff also served his employer's uninsured motorist carriers, Nautilus Insurance Company ("Nautilus") and Great Divide Insurance Company ("Great Divide"). In August 2021, Nautilus had the case removed to the United States District Court for the Eastern District of Tennessee. The case remained in federal court for around six months. Plaintiff served Defendant, through Blackwell, with copies of various documents that Plaintiff filed in federal court. Plaintiff eventually settled with Nautilus and Great Divide, and the case was remanded to the Trial Court.

On remand, Plaintiff renewed his motion for a default judgment. In May 2022, the renewed motion was served upon Blackwell. In June 2022, Plaintiff served Blackwell a notice of hearing. The notice read: "**COMES NOW** the Plaintiff, Roland Brown, by and through counsel, and hereby give Notice that the Plaintiff's Motion for Default Judgement will be heard on Monday, August 8, 2022, at 9:00a.m., in the Circuit Court for Jefferson County, Tennessee, before Judge Moore." In August 2022, the Trial Court held a hearing on Plaintiff's motion for default judgment. Defendant did not appear. Subsequently, the Trial Court entered default judgment in favor of Plaintiff, stating as follows:

## ORDER FOR JUDGMENT BY DEFAULT

This cause came to be heard on the 8th day of August 2022 upon Plaintiff's Motion for Default Judgment and subsequent Notice of Hearing on Plaintiff's Motion for Default Judgment. Present before the Court were: the Plaintiff, Roland Brown; and, Patrick A. Cruise, Plaintiff's counsel, to request this Court to enter a Judgment by Default pursuant to Rule 55.01 of the Tennessee Rules of Civil Procedure against Defendant HDR Logistics, LLC. Appearing to the Court that Defendant HDR Logistics, LLC was served with process to Answer the Complaint and was served with Plaintiff's

Motions for Default and Notice of Hearing, and failed to appear in court; and, after hearing testimony and reviewing the evidence, the Court finds as follows:

1. February 11, 2021, at approximately 8:46 p.m., at the Pilot Travel Center located at 505 Patriot Drive, Dandridge, Tennessee, Daniel Madrid was in the course and scope of his employment with HDR Logistics, LLC.

2. HDR Logistics, LLC is a for-hire motor carrier operating a tractor-trailor while transporting property in interstate commerce at the time of the incident causing injury, doing business in the State of Tennessee, subject to the jurisdiction of this Court, and governed by the Federal Motor Carrier Safety Administration.

3. On February 11, 2021, at approximately 8:46 p.m., at the Pilot Travel Center located at 505 Patriot Drive, Dandridge, Tennessee, Daniel Madrid was operating a 2014 International Tractor-Trailer owned by HDR Logistics, LLC.

4. On February 11, 2021, at approximately 8:46 p.m., at the Pilot Travel Center located at 505 Patriot Drive, Dandridge, Tennessee, Daniel Madrid's tractor trailer struck Roland Brown's tractor trailer, which was parked.

5. On February 11, 2021, at approximately 8:46 p.m., at the Pilot Travel Center located at 505 Patriot Drive, Dandridge, Tennessee, Daniel Madrid negligently and carelessly attempted to back his tractor-trailer into a parking spot next to Roland Brown's vehicle, resulting in a collision between the two vehicles.

6. As a result of the February 11, 2021 collision at the Pilot Travel Center located at 505 Patriot Drive, Dandridge, Tennessee, Roland Brown sustained injuries.

7. HDR Logistics, LLC was vicariously responsible for the acts, omissions, and conduct of Daniel Madrid in the operation of the tractor-trailer/commercial vehicle per the doctrine of *respondeat superior* and agency.

8. Roland Brown was injured as a direct result of the negligent acts of Daniel Madrid on February 11, 2021.

9. HDR Logistics, LLC was negligent in hiring, failing to adequately supervise, failing to train, and negligent in entrusting its commercial motor vehicle to Daniel Madrid.

10. As a result of the negligence of Daniel Madrid and HDR Logistics, LLC, the Plaintiff sustained permanent injury, suffered physical pain and suffering, sustained a loss of enjoyment of life, incurred medical expenses, and will incur general and special damages in the future.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED**, that a judgment by default is entered pursuant to Rule 55.01 of the Tennessee Rules of Civil Procedure against the Defendant, HDR Logistics, LLC, in the amount of $750,000.00 dollars plus the court costs to the Plaintiff, Roland Brown.

In August 2023, Defendant filed a motion pursuant to Tennessee Rules of Civil Procedure 55.02 and 60.02 to set aside the default judgment and for an extension of time to answer and respond to Plaintiff's first requests for admission. In its motion to set aside, Defendant stated, in part:

> The pleadings in this case indicate that Plaintiff served an individual named Lisa Blackwell at 1447 Joppa Road, Walling, TN 38587. Blackwell is Defendant's process agent through a blanket designation made pursuant to the Federal Motor Carriers Safety Act ("FMCSA"). Carriers registered with the FMCSA must appoint a process agent in each state in which they conduct business or that their drivers travel through. *See* 49 C.F.R. § 366.4. Carriers may appoint a process agent in each state through a blanket designation. *See* 49 C.F.R. § 366.5. HDR made a blanket designation appointing process agents in all required states through Interstate Authority LLC. Blackwell is Interstate Authority LLC's process agent in Tennessee, and thus, was designated HDR's process agent in Tennessee through HDR's blanket designation.
>
> According to the record, Plaintiff served Blackwell on April 7, 2021 with the original Summons and Complaint in this action and again on July 26, 2021, with Plaintiff's Amended Complaint. The record also reflects that Plaintiff served Blackwell with his Motion for Default Judgment by U.S. Mail on May 12, 2022 and the Notice of Hearing on Plaintiff's motion by U.S. Mail on June 6, 2022.
>
> No one at HDR received a copy of the Summons and Complaint in this action from Blackwell or any other individual. *See* Aff. of Rene Diaz at ¶¶ 7-9. Plaintiff's Motion for Default Judgment and Notice of Hearing on the motion were never received by any individual at HDR from Blackwell. *See id.* ¶ 9. Consequently, HDR had no notice or knowledge of Plaintiff's Motion for Default Judgment or the hearing on Plaintiff's motion.
>
> HDR did not have notice of the default judgment taken against it until on or about May 9, 2023, when Diaz received notice of a related lawsuit against it pending in the United States District Court for the Southern District of Texas. *Id.* ¶ 9. Immediately upon learning of the default judgment, HDR engaged outside counsel to handle the matter.

Defendant filed the affidavit of Alexis Reza ("Reza"), an agent for Defendant. Reza stated that she "received a letter of representation dated March 22, 2021 from Patrick A. Cruise, Esq. on behalf of Plaintiff Roland Brown in connection to his claim against HDR on or about April 1, 2021." She then "sent Rene Diaz, owner of HDR, the letter of representation by email on April 1, 2021," but "never received a copy of the Summons and Complaint in the above-captioned case." Defendant also filed the affidavit of Rene Diaz ("Diaz"), Defendant's owner, manager and director, as well as its registered agent in the state of Texas. Diaz stated that the first time she or anyone with Defendant received notice of Plaintiff's lawsuit was on or about May 9, 2023, "when Abraham Ponce, a commercial claims adjuster at New Horizon Insurance Company, hand-delivered to me a copy of the Complaint and Summons in Case No. 4:23-cv-01498, *Roland Brown v. Commercial Alliance Insurance Company*, which is currently pending in the United States District Court for the Southern District of Texas (the 'Texas Litigation')." Diaz stated that "[t]he Complaint in the above-captioned case was attached as Exhibit A to the Complaint in the Texas Litigation. The Texas Litigation is a declaratory judgment action regarding an insurance coverage dispute arising out of the automobile accident that is the basis for the above-captioned case."

In December 2023, the Trial Court heard Defendant's motion to set aside. In January 2024, the Trial Court entered an order denying Defendant's motion. The Trial Court incorporated by reference in its order a transcript of the hearing in which it expounded upon its reasoning. The transcript reflects the following exchange, in relevant part:

THE COURT: Try to -- I mean, you know much more about this than I do as far as trucking and agents and things like that go, but how did this woman who, by all accounts here, just took this and threw it in garbage, for the most part, in Tennessee -- how did she get hooked up with your client to let a lawsuit like this go through the crack?

MR. HOUSTON [counsel for Defendant]: Through the Federal Carrier Motor -- through the Federal Motor Carrier Safety Administration.

THE COURT: Did that administration appoint this woman to your client? How did this woman --

MR. HOUSTON: Well, it --

THE COURT: Or did your clients get on the phone or call this woman? Do you know?

MR. HOUSTON: No. It's through the site. These companies have, I guess, some type of relationship with the Federal Motor Carrier Safety Administration, and when you go on their site when you register to get your DOT number, you have to go through and check all these boxes as to making

-5-

sure that you have -- if you're an interstate carrier, that you have a default agent in every state. And that's how it works. It's not a perfect system.

THE COURT: Obviously not, or we wouldn't be here today.

MR. HOUSTON: No, sir. We're not -- and we're not disputing -- because, I mean, we don't know. We're not disputing whether or not she was served or not. The only thing we're saying is we know we did not receive a copy of this complaint or amended complaint, Your Honor.

THE COURT: Do you have the ability to fire this woman? I mean, that's --

MR. HOUSTON: I would assume so.

THE COURT: This relationship is what's teetering between me granting your motion and denying it because if this is somebody your company hired, or agreed to, even, or has made any contact with in the past as an agent, which is -- she's labeled as an agent, but if she's an actual agent, you know what I mean --

MR. HOUSTON: Understood, Your Honor.

THE COURT: -- of your company, then I'm going to let this stand, to be honest. Even if she's been so inept she didn't tell her bosses that this is coming, that's their problem for hiring her. But if this is somebody that got it smacked on her like a magnet onto the refrigerator by the State of Tennessee or this -- that federal administration you're talking about, that's a different animal.

MR. HOUSTON: The only thing I can represent to the Court, Your Honor, is that the agent -- the private agent that was hired by our company, HDR, that was served with the federal complaint, that complaint was served -- was provided to HDR, and that's why I'm here today. Your Honor, this complaint, the amend -- the underlying complaint and the amended complaint, they have no record of. It was never provided to them. This -- the lady that we're talking about, Your Honor, that was the default agent under the Federal Motor Carrier Safety Administration Regulations -- I don't want to speculate. I would assume HDR had the ability to terminate her if they knew that there was an issue. But that's just it, Your Honor. They never received an issue through her. They've never received a complaint through her. This is the first lawsuit that they've received.

THE COURT: I'll tell you what I'd kind of like to do on this case. Because this is a big deal. He's been on this case for -- this case has been dead, if you will, for a year or two. Whatever --

MR. CRUISE: Your Honor -- go ahead.

MR. HOUSTON: Well, I would like to point out one last thing really quick, Your Honor, if I may. If you don't want me to, Your Honor, I'll be quiet.

THE COURT: Go ahead. That's fine.

MR. HOUSTON: Okay. One last thing. So the key to this case, and what Your Honor should be looking at, is this: Your Honor, whether or not excusable neglect is present, you have to look at HDR's intent. Whether they intentionally or willfully failed to respond in this case. Your Honor, those facts are clearly not here. The plaintiff hasn't demonstrated those facts. What we have here is this. We have the motion for default that was filed. It was served on the same lady that never provided any notice of anything to HDR. It is well known and documented in the records that the plaintiff had HDR's address, that the plaintiff had HDR's fax number, that the plaintiff had e-mail addresses for HDR because after the Federal Court matter was filed, all of that information was sent to HDR. Again, Your Honor, during the time period of when the amended complaint was -- well, the complaint was filed, the amended complaint was filed, and even when the motion for default judgment was filed, and when the notice of hearing was filed, none of that was ever sent to HDR. Your Honor, a simple phone call to HDR by the plaintiff would have sufficed. At the end of the day, there is no notice that any anybody can point to to HDR as it relates to this motion for default. The only notice that you can point to is the notice to the default agent under the Federal Motor Carrier Safety Regulations, which HDR never received. And it is not whether the agent received it, it's whether HDR had notice, Your Honor. And I submit to the Court that that's the law in Tennessee, and that is a law that will stand as it relates to excusable neglect. Now, there are other factors, if the Court would like for me to go through them, but I think the Court understands those factors.

THE COURT: I don't know that either of you are going to satisfy me, which I'm going to let him speak, so -- I'll tell you what I am considering trending for, depending on what he tells me right now, is a continuance of this to allow somebody to do a little discovery on this agent. But you're here today, and I want to hear from you, regardless.

MR. CRUISE [counsel for Plaintiff]: I appreciate that, Your Honor.

MR. HOUSTON: Thank you, Your Honor.

MR. CRUISE: Where do I start?

THE COURT: Let's start about this agent. Because that's --

MR. CRUISE: Yeah. Let me tell you something.

THE COURT: That's the main thing I'm concerned with.

MR. CRUISE: Let me tell you about this agent. I do trucking litigation. I've served her on other cases. I just served her two months ago, all right? This is her job. I don't have anyone else disappearing for two years. Here's what really happened. And by the way, this whole thing about notice, it's wrong. All due respect, it's wrong. The case law is crystal clear.

All the notice cases they cite deal with individuals.  We get that, right?  Makes sense.  You better have actual notice.  Well, we got a pronoun issue here.  Who is "we"?  Well, "we" is a business, a business.  A business appoints an agent and is required to appoint an agent by the Federal Motor Carrier Safety Administration.  They select the agents through every state they operate in, Your Honor.  And I've just looked it up on the internet.  Guess who their agent in Tennessee still is.  It's Lisa Blackwell, just like she's the agent --

THE COURT: Is that the woman that we're talking about?

MR. CRUISE: Yeah.

THE COURT: Okay.

MR. CRUISE: I was telling my paralegal as I was looking at this last week, I said, "Lisa Blackwell?  Shoot, we've served her before."  And paralegal said, "Yeah, we just served her a few weeks ago on another case, and they just filed an answer."  30 times, this lady was served, Your Honor.  Here's what really happened because I can tell you're wondering.  They're wrong on the law.  These two cases say specifically -- and this one's brand new out of my neck of the woods, Your Honor, with Judge Hollinsworth.  They specifically state that in the two cases where a business said, "Well, our registered agent didn't tell us," the courts say that's not excusable neglect.  That's not a basis to set aside a default judgment, yet that's their argument, all right?  The Herron case and the Sanders case both are directly on point.  And in both those cases, the trial court has discretion and did not set aside the default, and the Court found that was proper.  Now, let me -- I keep saying I want to talk about what really happened.  This wreck is almost three years ago.  I get the case.  I send a letter to the insurance company for his client, who is probably paying him right now, all right?  They say, "We don't have coverage.  We don't have coverage."  You know why they don't have coverage?  They've got a Mexican driver coming in through the State of Texas, and when HDR Logistics got this insurance policy through New Horizons, they said, "We're not going to drive beyond a thousand miles."  They weren't supposed to be here, Your Honor.  And that's why they can tell you -- and it seems like you believe it.  I don't.  They got all this stuff, Your Honor.  This is a professional person.  She's appointed.  She had to be appointed under federal law.  I just had -- I was on the phone the other day with the company, the blanket agency, that employs these various people across the state, and he said, "She's one of our best."  They're telling you they didn't get notice. That's what they're telling you.  30 times, they disregarded a court order from not only you, all the -- everything I sent them, but a federal judge.  I don't know if you saw that in my submission, Your Honor.  This case got put up to Federal Court by an unnamed UM carrier.

THE COURT: Yeah.

MR. CRUISE: The federal judge said, "You've got 15 days." They were getting requests for admission, interrogatories. I think there was 20 different documents. You know how Federal Court is. They document the heck out of everything, right? They're getting served with all that. What really happened is we get this judgment here, Your Honor. Then my client -- and they want to talk about prejudice. I've got to get an attorney in Texas, right? The attorney in Texas files suit against the insurance company. That's when they claim they got notice. But what really happened is the insurance company said, "Oh, shoot. We've got a problem now." They get counsel in Memphis and come over here. But all of that is beside the point, Your Honor. But the case law is crystal clear that it -- that even if we believe that, that they did not get this -- I don't, but even if we do, it doesn't matter. The case law says, in exact scenarios like this, that if they claim we didn't get it, that's too bad.

\*\*\*

THE COURT: Thank you. Very good argument. [Defendant's] motion to set aside the default judgment is denied, though. And I'm going to hang my hat on what I was talking about. We have a process for it in Tennessee, and there's a process agent, and, I mean, without conducting a hearing for proof, which I'm not going to do at this point with that, as far as that's concerned. I mean, that's what the process agent is here for, so based on that and the plaintiff's response to your motion to set aside, your motion is denied. That way, you can appeal this if you need to. But it's a sticky issue for me.

Defendant timely appealed to this Court.

## **Discussion**

We restate and consolidate Defendant's issues on appeal as follows: 1) whether the Trial Court abused its discretion in denying Defendant's motion to set aside default judgment; and 2) whether the Trial Court erred by failing to conduct a writ of inquiry to determine unliquidated damages. Plaintiff raises separate issues of whether this appeal is frivolous and whether Defendant waived any issues pertaining to its motion for extension of time to answer and respond to Plaintiff's requests for admission. Plaintiff also filed a motion asking this Court to take judicial notice of a government website showing that

Blackwell remains a designated process agent for Defendant despite her alleged failure to inform Defendant about Plaintiff's lawsuit against it.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Both parties contend with Tennessee Rule of Civil Procedure 55.01 concerning default judgment. Rule 55.01 states:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:
>
> The party entitled to a judgment by default shall apply to the court. Except for cases where service was properly made by publication, all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action. A party served by publication is entitled to such notice only if that party has made an appearance in the action. No judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

Tenn. R. Civ. P. 55.01.

Defendant sought to set aside default judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable

-10-

neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02. "When a party seeks relief from a final judgment pursuant to Rule 60.02, the burden of proof rests with that party." *Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003). With respect to the factors that courts consider when deciding whether to set aside a default judgment, this Court has stated:

> We review a trial court's entry of a default judgment and its refusal to set that judgment aside pursuant to a Tenn. R. Civ. P. 60.02 motion under an abuse of discretion standard. *Tenn. Dep't of Human Serv. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985). However, in the interests of justice, the courts have expressed a clear preference for a trial on the merits. *Id*. Thus, rule 60.02 is construed liberally in the context of default judgments. *Id*. at 867. In deciding whether to grant a rule 60.02 motion to set aside the default judgment, courts consider three criteria: 1) whether the default was willful; 2) whether the defendant has asserted a meritorious defense; 3) the amount of prejudice which may result to the non-defaulting party. *Id*. at 866. If there is any reasonable doubt about whether the judgment should be set aside, the court should grant relief. *Nelson v. Simpson*, 826 S.W.2d 483, 486 (Tenn. Ct. App. 1991).

*Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003). In 2012, the Tennessee Supreme Court further explained and clarified the analysis for whether to set aside a default judgment for excusable neglect, emphasizing the threshold nature of willfulness. The High Court stated, in part:

> Today we clarify that when a party seeks relief from a default judgment due to "excusable neglect," whether pursuant to Rule 54.02 (for interlocutory judgments), Rule 59.04 (for final judgments within thirty days of entry), or Rule 60.02 (for final judgments more than thirty days after entry), a reviewing court must first determine whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable

neglect" grounds, and the court need not consider the other factors.[1]  If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief.  The court may also consider any other factor that it deems relevant.

*Discover Bank v. Morgan*, 363 S.W.3d 479, 493-94 (Tenn. 2012) (footnote in original but renumbered).  Willfulness includes flagrant and unexplained conduct.  *Id*. at 493.

Our standard of review on a motion to set aside default judgment is the deferential abuse of discretion standard.  *Crutcher v. Ellis*, No. M2023-00283-COA-R3-CV, 2024 WL 2830924, at *3 (Tenn. Ct. App. June 4, 2024), *no appl. perm. appeal filed*.  In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.  *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000).  It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives.  *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999).  Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.  *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

> Discretionary decisions must take the applicable law and the relevant facts into account.  *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996).  An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision.  *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).  A court abuses its discretion when it causes an injustice to the party challenging the decision by

---

[1] In the interests of judicial economy, trial courts are encouraged to make alternative findings as to the other two factors where expedient to do so.  *See Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 714 (Tenn. 2006).

(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

The first issue we address is whether the Trial Court abused its discretion in denying Defendant's motion to set aside the default judgment. Defendant contends that the Trial Court failed to make sufficient findings on the applicable factors. According to Defendant, the Trial Court erred by relying solely and simply upon the fact that Blackwell was served. Defendant points to the affidavits of Diaz and Reza to show that it was unaware of Plaintiff's lawsuit until May of 2023. Defendant argues that, under Tennessee law, a party's lack of actual notice of a hearing supports a finding of excusable neglect.

Regarding the adequacy of the Trial Court's findings, the Trial Court did not make explicit findings on the three factors set out in *Discover Bank* and related caselaw. However, at the hearing on Defendant's motion to set aside, the Trial Court discussed its reasoning. The Trial Court focused on the fact that Plaintiff served Blackwell, Defendant's designated agent in Tennessee for service of process. The Trial Court stated that, if Blackwell simply failed to notify Defendant of the lawsuit, that would be Defendant's

problem for having hired her. In other words, Blackwell's failure to notify Defendant would not affect the validity of Plaintiff's service of process.

Under *Discover Bank*, the threshold inquiry on a motion to set aside a default judgment is the willfulness of the defaulting party, including flagrant and unexplained conduct. 363 S.W.3d at 493. While the remaining factors may be addressed for judicial economy, a finding of willfulness is conclusive. On the issue of willfulness, the Trial Court plainly was unimpressed with Defendant's assertion that it lacked notice when its designated agent was served so many times. Both at trial and on appeal, Defendant has striven mightily to divorce itself totally from its agent, Blackwell. The Trial Court found no merit to this argument. Neither do we. While the Trial Court did not expressly say so, it effectively found willfulness on Defendant's part as that term is defined in *Discover Bank* to include unexplained conduct. The Trial Court's effective determination that Defendant's conduct was willful, with which we agree, settled the matter. Thus, the Trial Court's findings were sufficient.

Turning to the merits of Defendant's argument, Defendant cites its lack of actual notice as grounds for excusable neglect. However, Defendant has failed to explain what the excusable neglect consisted of.[2] The record contains no affidavit from Blackwell explaining what happened. It was incumbent upon Defendant, as the movant on a motion to set aside, to explain why service on its designated agent was insufficient to alert it to the lawsuit. The record's silence as to Blackwell's actions is a significant omission. Blackwell was Defendant's designated agent in Tennessee for service of process. To the outside world, including litigants like Plaintiff, Blackwell was a means by which Defendant could be served with process. Defendant says that there were other means to serve the company besides Blackwell, and that Plaintiff should have tried those means. That Plaintiff could have served Defendant by other means is irrelevant. Blackwell, Defendant's designated agent in Tennessee for service of process, was one such means. Blackwell was either Defendant's agent or she was not. Defendant does not attempt to argue that she was not. Consequently, Plaintiff was entitled to rely on Blackwell as an effective means to serve Defendant.

In a case addressing the effect that service of process on a principal's registered agent has on that principal, the U.S. Bankruptcy Court, Eastern District of Tennessee, stated:

---

[2] While the term "excusable neglect" is used both in Tennessee case law and the Tennessee Rules of Civil Procedure, it is a somewhat contradictory notion. It is difficult to square how if conduct is neglectful, it can be excusable. Likewise, if conduct is excusable, how can it be neglectful? This is nothing we need to consider any further in this Opinion.

[T]he argument that the Defendant rather than its registered agent "has never received a copy of the complaint and summons" is misplaced. When its registered agent was served, the Defendant was served. Any alleged breakdown in communication between the Defendant and C.T. Corporation System is a matter between those parties, and has nothing to do with the Plaintiff or the validity of his service of process.

*In re Patterson*, 330 B.R. 631, 638 n.6 (Bankr. E. D. Tenn. 2005). The Bankruptcy Court stated further: "Even if the Defendant did not intentionally disregard the prior communications in this adversary proceeding, the fact that it might have problems with its registered agent for service of process does not 'satisfactorily explain how the Defendant's conduct fails to constitute a reckless disregard for the judicial process.' [*In re*] *Bradbury*, 310 B.R. [313,] 318 [(Bankr. N.D. Ohio 2003)]." *Id*. at 639. We find the Bankruptcy Court's reasoning persuasive. There is no point in a company having a designated agent for service of process if litigants cannot count on that agent as a means for serving process on the company.

What is more, Defendant has offered no explanation at all for why it never received notice of the lawsuit even though its designated agent was served. The record contains no affidavit from Blackwell explaining what happened. Under *Discover Bank*, unexplained conduct by a defaulting party is one form of willfulness. In the absence of any explanation from Defendant for why service on its designated agent did not put it on notice of Plaintiff's lawsuit, we find, as did the Trial Court, that Defendant's failure to respond to Plaintiff's lawsuit was willful in character.

For completeness' sake, we review the remaining factors. With respect to a meritorious defense, Defendant has offered none except to assert that it could develop one at a later stage in the process. That does not favor setting aside the default judgment. Regarding prejudice, there is no evidence that Plaintiff would incur any specific prejudice if the default judgment were set aside. Even still, this factor is outweighed by Defendant's willfulness as a threshold matter, as well as Defendant's lack of a meritorious defense. There is a preference in Tennessee for trial on the merits, but this preference is not absolute. We hold that the Trial Court's decision to deny Defendant's motion to set aside default judgment had a factual basis that was properly supported by evidence in the record; that the Trial Court properly identified and applied the most appropriate legal principles applicable to the decision; and that the Trial Court's decision was within the range of acceptable alternative dispositions. The Trial Court did not abuse its discretion in denying Defendant's motion to set aside.

The next issue we address is whether the Trial Court erred by failing to conduct a writ of inquiry to determine unliquidated damages. Defendant argues that "the trial court

was not authorized to enter judgment in a specific amount against Defendant because Plaintiff's damages are unliquidated," and that "the trial court should have entered the Default Judgment and set a writ of inquiry to determine Plaintiff's damages at a later date." Defendant argues that the figure of $750,000.00 in damages was unsupported.

In a case involving discovery sanctions, we discussed damages for judgment by default as follows:

> When a default judgment is entered against a defendant, he or she "impliedly confesses all of the material allegations of fact contained in the plaintiff's declaration *except the amount of the plaintiff's unliquidated damages*." *Adkisson v. Huffman*, 225 Tenn. 362, 469 S.W.2d 368, 375 (1971) (emphasis added); *see also Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984). A defendant against whom a default judgment has been entered "may introduce evidence . . . on the question of damages." *Adkisson*, 469 S.W.2d at 374 (citation omitted); *see also Patterson*, 665 S.W.2d at 101.

> \*\*\*

> "A fundamental requirement of due process is notice and an opportunity to be heard." *Phillips v. State Bd. of Regents*, 863 S.W.2d 45, 50 (Tenn. 1993). Procedural due process is a right guaranteed by the federal and state Constitutions. *Redd v. Tenn. Dep't of Safety*, 895 S.W.2d 332, 334 (Tenn. 1995).

> The plaintiff's motion is expressly one for sanctions under Tenn. R. Civ. P. 37.02. The motion clearly recites what the plaintiff intends to seek at the May 5, 2003, hearing:

>> [P]ursuant to Rule 37.02 of the Tennessee Rules of Civil Procedure . . . any and all relief to which she is entitled, including but not limited to judgment by default. . . .

> It is likewise clear that the reason for the plaintiff's request is "the defendant's failure to obey the lawful orders of this Honorable Court." This motion put the defendants on notice that the plaintiff intended to seek *such relief as is provided for in Tenn. R. Civ. P. 37.02*. While such relief includes "judgment by default" and "reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order]," it clearly does not include an award of unliquidated damages in an automobile case.

-16-

We hold the trial court erred, as a matter of law, in considering the issue of damages under the notice accompanying the plaintiff's motion. That notice, reasonably construed, did not advise the defendants that the issue of unliquidated damages would be addressed on May 5, 2003. We reject the plaintiff's suggestion that a hearing was not required under Tenn. R. Civ. P. 55.01. Such an interpretation and application of the rule does not comport with procedural due process.

*Burnette v. Sundeen*, 152 S.W.3d 1, 4-5 (Tenn. Ct. App. 2004).

In the appeal now before us, the record contains no transcript of the default hearing. However, the Trial Court stated in its Order that its findings were made "after hearing testimony and reviewing the evidence." Defendant points to nothing that contradicts this statement in its Order by the Trial Court. The record contains no transcript or statement of the evidence from the default hearing. We are left, then, with the Trial Court's statement in its Order saying it heard testimony and reviewed the evidence. Regarding whether a separate hearing was necessary to determine damages, Plaintiff contends that "[t]here is nothing in Rule 55.01 nor Tennessee jurisprudence which requires an inquiry on damages to be made at a separate hearing from the hearing on the motion for default." Indeed, the caselaw cited by Defendant reflects that a defaulting party must be afforded sufficient notice of the hearing on damages, not that the hearing necessarily must happen on a particular separate date. Here, Plaintiff served Blackwell, Defendant's designated agent, with notice of the hearing on default judgment. Defendant fails to articulate what additional notice it needed to know it stood to face damages for default judgment. It should have been clear to Defendant from the notice that Defendant risked incurring the damages sought in Plaintiff's operative complaint if it did not show up and make any sort of case on its behalf. Defendant failed to do so, without explanation. We conclude from the record before us that Defendant failed to meet its burden to show that the Trial Court did not comply with Tenn. R. Civ. P. 55.01 by holding an evidentiary hearing on unliquidated damages.

As a final matter, we address Plaintiff's issues. First, we determine that Defendant's appeal, while unsuccessful, is not so devoid of merit as to be frivolous. Second, Plaintiff's issue of whether Defendant has waived any issues regarding its request for an extension of time is moot as there is nothing to waive. We also deny as moot Plaintiff's motion to take judicial notice. The judgment of the Trial Court is affirmed.

-17-

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, HDR Logistics, LLC, and its surety, if any.

 

_____
D. MICHAEL SWINEY, CHIEF JUDGE